UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS

In re:

| | | |
|---|---|---|
| Andrea Yvette Harris ) | Case No. 16-35737 |
|     Debtor ) | |
| ) | |
| BEN ABBOTT & ASSOCIATES, PLLC ) | |
|     Plaintiff ) | Adversary Case No.   17-3057 |
| vs. ) | |
| ) | |
| ANDREA YVETTE HARRIS ) | |
|     Defendant. ) | |

**DEFENDANT'S MOTION AND BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S ADVERSARY CASE UNDER RULE 12(b)(6)**

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 21 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.

NOW COMES, Debtor/Defendant ANDREA YVETTE HARRIS, by and through her attorney Sherlyn Smith and by agreement of Counsel for the Plaintiff, moves this Court to dismiss the Plaintiff's adversary case pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure and states in support thereof:

BACKGROUND

On or about September 7, 2014 the Debtor Andrea Yvette Harris ("Debtor" or "Harris") was involved in a motor vehicle accident with Elizabeth P. Snell. On or about September 9, 2014 Harris retained the law firm Lafitte, Abbott, Wingo, Rehfeld & Holloway, PLLC ("LAWRH")

(Exhibit A) to represent her in the personal injury action against Snell. At some time subsequent, LAWRH became known as Plaintiff in this action Ben Abbot & Associates, PLLC ("Plaintiff"). Plaintiff sent a demand letter claiming Harris' medical damages alone as $37, 283.00 (Exhibit B).[1] On June 15, 2015 Plaintiff filed suit against Snell in Harris County Texas styled as case number 2015-33289 Andrea Harris v. Elizabeth Snell (collectively "the Parties"). On or about September 1, 2016 the Parties and their respective attorneys attended mediation. During the mediation, Harris informed Plaintiff through its representative Mr. Sanders, that due to her lost wages, inability to work and earn income for nearly two years, and the ongoing medical expenses, that even with the policy limits of $30,000.00, she would have no recourse but to file bankruptcy. (*See* Exhibit C). On or about October 26, 2016, Sherlyn Smith ("Smith") and Jennifer Rehfield of Plaintiff Ben Abbot and Associates, had a conversation by telephone wherein Smith informed Rehfeld that she was an attorney and also a relative of Harris and that Harris was contemplating bankruptcy because the amount of the settlement award, less costs, fees, and expenses was insufficient to pay her delinquent bills. (See Exhibit D; See also Exhibit H ¶14) In said telephone conversation, Rehfield suggested they may be able to negotiate a higher amount for Harris based on reductions in the medical expenses. Id. Smith agreed to convey that information to Harris but also informed Rehfield that Harris had not paid her car note since the accident and that not earning income for two years placed her in debt. Id. In a subsequent conversation with Plaintiff, Harris informed Plaintiff that she did not want the settlement monies dispersed, because she would be filing bankruptcy and that money would be disclosed as an asset in the filing (See Exhibit C; Exhibit H ¶15; Exhibit I).[2]

---

[1] The Stowers demand letter included the medical damages up to the date of the letter but did not specifically address Harris' lost wages and property damage.

[2] During this series of conversations with Plaintiff, Harris expressed dissatisfaction with how the case was handled by Plaintiff citing several reasons including frequent reassignment of her case, poor client communication, and the

Harris filed bankruptcy in case number 16-35737 on November 17, 2016 listing the Plaintiff as Priority Non Secured debt (Exhibit E and E1). Additionally, Harris filed an application for fee waiver based on her categorical eligibility for receiving public assistance. (Exhibit L1, L2). Harris listed all medical providers related to the car accident and personal injury claim on the creditors matrix, but could not list them in the schedules as they had never billed her for their services (See Exhibit C and Exhibit I).  Smith notified Plaintiff of the filing in an email dated November 21, 2016. (Exhibit F).  A Notice from the Bankruptcy court was sent to the Plaintiff including the deadline to file an objection to discharge.  Exhibit G.

On January 12, 2017, a 341 Creditors Meeting was held.  Plaintiff did not appear.  At the meeting, Harris stated on the record that she filed bankruptcy due to a lack of income and inability to work and pay her debts subsequent to a car accident.  Further, it was stated on the record of the 341 Meeting that Harris was not seeking to discharge the attorney's fees for Plaintiff.  On January 16, 2017, Smith notified Plaintiff in an email that the Plaintiff's fees were listed as priority debt and would <u>not be discharged</u> in the bankruptcy (Emphasis added).  See Exhibit F.

On February 21, 2017 Plaintiff filed an adversary case against Harris known as 2017-030507 alleging Harris "knowingly and fraudulently presented a false claim" and that the debt was not dischargeable under 11 U.S.C. § 523 *et. seq*.  (Exhibit H).  On or about March 2017, Smith spoke with counsel for Plaintiff ("Kahn") by telephone and informed her of the facts of the case and the gross mischaracterizations about Harris contained in her pleading. (See Exhibit D). Smith and Kahn further agreed to reset the scheduling conference.[3] The Debtor was discharged

---

undervaluing of her damages in the demand which she believed led Snell to reject the full policy limits settlement earlier in the case.  Harris indicated that she would file a grievance with the State Bar based on her dissatisfaction.
[3] Smith filed a motion with the court to continue the scheduling conference on April 12, 2017 as document 9 in case 17-03057. Motion was denied and the hearing was held on April 12, 2017.

of her debt on March 27, 2017. (Exhibit K). The scheduling hearing was held on April 17, 2017[4]. At said hearing, counsel for Plaintiff was admonished by the Court that the adversary suit did not meet the Fifth Circuit standards for showing "malicious" and "willful". The Court admonished Plaintiff about the merits of its claims and offered Plaintiff opportunity to voluntarily withdraw the suit. The scheduling hearing culminated in a trial order, hereto attached as Exhibit M, setting the matter to be heard on October 11, 2017 and granting leave to Harris to file an answer or a motion to dismiss by April 30, 2017. Harris now timely files her motion to dismiss.

## **ARGUMENT**

I. PLAINTIFF'S ADVERSARY CASE SHOULD BE DISMISSED WITH PREJUDICE AS IT FAILS TO STATE A CLAIM UNDER 11 U.S.C. § 523.

  A. <u>Plaintiff Fails to Prove A Cognizable Claim</u>

Debt for willful and malicious injury by the debtor to another entity or to the property of another entity is non-dischargeable. 11 U.S.C. §523 (a)(6). Section 523(a)(6)'s exemption from discharge, is confined to debts "based on what the law has for generations called an intentional tort." <u>Kawaauhau et vir v. Geiger.</u> 523 U.S. 57, 60 (1998) (affirming 8th Circuit definition of "willful and malicious injury").

Here, Plaintiff relies on §523(a)(6) as a basis for why Harris' debt is non-dischargeable. However, section 523(a)(6) is specific to the nature of certain debts and how they were incurred, such as, *inter alia,* consumer debt for luxury items incurred within ninety days preceding bankruptcy discharge, debt incurred from intentional tort, domestic support obligations, and student loans. The spirit and intent of section 523 contemplates; intentional tortfeasors who

---

[4] Attorney Julia Bancroft appeared on behalf of Sherlyn Smith for the scheduling conference on April 12, 2017.

intend to escape the consequences of their tortious actions under protections of the bankruptcy code. In order to allege that Harris incurred a debt to Plaintiff with malice or by intentional tort, the injury would have necessarily preceded the filing of the bankruptcy and not have been a consequence thereof. Plaintiff fails to show injury caused by the act of Harris' engagement.

Plaintiff's complaint alleges that the malicious and willful injury, namely Harris' 2016 bankruptcy filing, occurred after the predicate act of retaining Plaintiff in 2014. Harris could not have entered into a relationship with the Plaintiff and then subsequently, after two years, formed the malicious or willful intent to injure Plaintiff by that earlier undertaking. The intent to harm Plaintiff would have necessarily been present at the time of the engagement in 2014, which Plaintiff has not alleged or presented here

Harris' engagement of the Plaintiff for legal representation was not tortious or entered into maliciously and therefore section 523(a)(6) simply does not apply.

II. PLAINTIFF'S FAILS TO PROVE THAT HARRIS' BEHAVIOR WAS WILLFUL OR THAT HARRIS ACTED WITH MALICIOUS CONDUCT.

A. Plaintiff Based Its Allegations Of Fraud And Malicious Conduct On Conjecture.

An allegation of fraud must be pled with specificity pursuant to Rule 9b made applicable by Bankruptcy Rule 7009. Tow v. Henley, 480 B.R.708, 771 (Bankr. SD Tex. 2012). Allegations upon information and belief do not meet the particularity requirements of Rule 9(b). In re NJ Affordable Homes Corp., LEXIS 4798 (Bankr. Dist. NJ 2013). "Fraudulent intent may be shown by a reckless disregard for the truth". Id.. at 774 (citing In re. Cline, No. 09-45977-DML-7, 2010 Bank. R LEXIS 35848 "the existence of more than one falsehood, together with [the debtors'] failure to take advantage of the opportunity to clear up all inconsistencies and omissions when

[they] filed their amended schedules, constitutes[s] a reckless indifference to the truth and, therefore, the requisite intent to decisive.")

Turning to the instant case, the allegations made in Plaintiff's complaint-accusing Harris of having fraudulent intent in her filing are purely speculative and based on hearsay statements. Plaintiff's complaint makes allegations of Harris' statements to others "upon information and belief" however, no affidavit or any other proffer substantiating or providing a factual basis for the alleged statements and or their characterization and context was provided or attached to the complaint. Such unsubstantiated allegations concerning the intent, context, and meaning of Harris' alleged words constitute conjecture and fall short of establishing a factual basis upon which a claim of fraud can be sustained.

At no time has Plaintiff alleged or demonstrated any falsehoods claimed by Harris. Rather, Plaintiff intends to imply that the omission of specific creditors from Harris' schedules constitutes an intent to deceive. Plaintiff failed to provide a complete account of the omission, however. Harris testified at the 341 meeting of creditors that she never received any bills from the medical providers or from Plaintiff in connection with the services they provided and did not know and could not ascertain what debts she owed to them. Harris further stated on the record at the meeting that she would reserve the right to amend the schedules if any bills were subsequently received. Notwithstanding her inability to list them on Schedule E of the bankruptcy, she did include the medical providers on the creditor matrix so that they would receive notice and have an opportunity to make a claim. Harris disclosed the existence of the medical providers both in her filing and in her sworn testimony. Such disclosure undermines an attempt or intent to conceal or commit fraud in bankruptcy. It is well settled that a necessary element of fraud is intent, Harris' effort to make the medical creditors aware of the bankruptcy

filing despite having no bill or invoice from them, indicates her intention to be truthful and transparent and negates any alleged claim of fraudulent intent.

### B. Plaintiff Had Actual and Constructive Knowledge That Harris Was Not Attempting To Discharge Her Debt To The Plaintiff.

The Plaintiff through her papers alleged that Harris filed the bankruptcy case in an effort to commit fraud and to avoid debt to the Plaintiff.  This allegation lacks a factual basis and was recklessly made against Harris due to Plaintiff's knowledge of the facts.  In Plaintiff's own papers, it admits a conversation with Harris' "cousin" and attorney Sherlyn Smith.  Prior to the filing of the papers, a partner at Plaintiff's firm received an email communication from Sherlyn Smith clearly stating that the Plaintiff's debt was not being discharged.  Based on the representations of Sherlyn Smith, an officer of the court and attorney at law, Plaintiff had knowledge that the allegations that Harris was seeking to avoid their fee were false.

Additionally, Plaintiff had constructive knowledge that the Plaintiff's fee was not going to be discharged which was available both in the schedules filed which listed Plaintiff as "priority debt" as well as the transcript of the 341 meeting

### C. Plaintiff Knew That Harris Was Destitute And Knowingly Mischaracterized Harris' Statements To Imply Bad Faith

In its papers, Plaintiff cites to unsubstantiated statements made by Harris to her attorney that imply she would maliciously seek bankruptcy protection if they did not either get her more of a settlement or reduce their fee.  Notwithstanding possible ethical violations of the attorney client communication privilege, the alleged statement was taken out of context and used by Plaintiff for malicious purposes  despite Plaintiff's knowledge of Harris based on-their representative relationship to be a debtor who has not earned substantial income in over two

years, is a single mother currently living with relatives, having defaulted upon secured debts (car loan) and who depends on state public assistance as demonstrated in her application for fee waiver.[5]

As stated in her affidavit, Harris, a debt strapped single mother, confided in her attorney that the settlement was not even enough to satisfy her medical payments, least her property damages and because after their fee, she would not have sufficient funds to pay her obligations, namely the car, and that because she had lost significant income, she was facing bankruptcy.

The evidence of Harris' financial problems was contained in her statement of financial affairs; scrutinized and assessed by the bankruptcy trustee; and ultimately approved in the order discharging her debt under chapter seven of the bankruptcy code entered on March 27, 2017. Arguably, Harris' situation is exactly what the protections of the bankruptcy code contemplate yet Plaintiff now attempts to claim that the filing was fraudulent with no credible evidence in support thereof.

### III.    PLAINTIFF'S SUIT IS FRIVOLOUS

Plaintiff brought the adversary alleging that Harris fraudulently and maliciously filed bankruptcy and her debt was not dischargeable under section 523(a)(6) of the bankruptcy code. As previously discussed, section 523(a) does not apply to Harris or the Plaintiff. Cursory research and investigation of existing case law would have demonstrated the use and intention of section 523(a)(6) and precluded a claim brought under this section against Harris.  Plaintiff filed the law suit making such allegations without a good faith investigation into the factual basis of its claims. Plaintiff's failure to bring a suit with a legal basis constitutes a frivolous law suit.. Moreover, at the scheduling hearing held on April 12, 2017 the Court advised Plaintiff that the

---

[5] Harris' fee waiver application and a copy of her TANF benefits card was filed with the bankruptcy court and viewable on PACER.

section did not apply to the suit and that Plaintiff's claim was not "within ten miles of current law". Arguably, if Plaintiff had concerns about the dischargeability of the debt, it could have filed an objection to the discharge pursuant to the bankruptcy rules.

    **WHEREFORE**, Harris prays that this Court enter an order dismissing the adversary suit, or in the alternative, enlarging the time by which Harris may answer the suit; assess sanctions against the Plaintiff under the Court's inherent powers, and award Harris' attorney reasonable attorney's fees incurred in the defense of this frivolous adversary suit; and any other relief this Court finds just and necessary.

Respectfully Submitted,

  /s/Andrea Harris

/s/ Sherlyn Smith

Smith Weeden
6855 S. Mason Rd. #17105
Katy, TX 77450
(708) 663-5446
attysherlynsmith@gmail.com

**Certificate of Service**

On the 28th day of April 2017 the undersigned served the following parties with a copy of this motion by using the electronic filing system (ECF/CME). A copy was served upon the Debtor using regular first class US mail from Katy, TX by 5:00pm.

/s/ Sherlyn Smith

<u>Debtor</u>
Andre Yvette Harris
22136 Westheimer Pkwy #334
Katy, TX 4450

<u>Plaintiff's Attorney</u>
Jennifer Kahn
The Kahn Law Firm
9330 Broadway, Suite A224
Pearland, TX 77584

<u>Chapter 7 Trustee</u>
1201 Louisiana
28th Floor
Houston, TX 77002
<u>Debtor's Attorney</u>
Sherlyn Smith
6855 S. Mason Rd #17105
Katy TX, 77450